United States District Court
Southern District of Indiana
New Albany Division

Michael Woods,
Plaintiff,

v.

B. Hurt,
Sgt. Blanton,
Casework Manager Bookout,
Officer Sircelly,
Officer Turner,
Officer Gray,
Leiutenant Morados,
Leiutenant Jackson,
Officer Bishop, and an
Unknown Officer,
and Nurse,     Defendants.

Cause No.    1:23-cv-01019-SEB-TAB

Jury Demand

FILED
06/12/2023
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

# COMPLAINT

## Parties

**Plaintiff:**

Name: Michael Woods   DOC #911570
Address: Pendleton Correctional Facility, 4490 West Reformatory Road, Pendleton, Indiana 46064

**Defendants.**

Name: B. Hurt
Title: Correctional Lieutenant
Address: Pendleton Correctional Facility, 4490 West Reformatory Road, Pendleton, Indiana 46064

(1.)

## DEFENDANTS CONTINUED

NAME: Sgt. Blanton
TITLE: Correctional Sergeant
ADDRESS: Pendleton Correctional Facility, 4490 West Reformatory Road, Pendleton, Indiana 46064

NAME: Casework Manager Bockout
TITLE: Correctional Casework Manager
ADDRESS: Pendleton Correctional Facility, 4490 West Reformatory Road, Pendleton, Indiana 46064

NAME: Officer Sirguy
TITLE: Correctional Officer
ADDRESS: Pendleton Correctional Facility, 4490 West Reformatory Road, Pendleton, Indiana 46064

NAME: Officer Turner
TITLE: Correctional Officer
ADDRESS: Pendleton Correctional Facility, 4490 West Reformatory Road, Pendleton, Indiana 46064

NAME: Officer Gray
TITLE: Correctional Officer
ADDRESS: Pendleton Correctional Facility, 4490 West Reformatory Road, Pendleton, Indiana 46064

NAME: Lieutenant Morados
TITLE: Correctional Lieutenant
ADDRESS: Pendleton Correctional Facility, 4490 West Reformatory Road, Pendleton, Indiana 46064

## DEFENDANTS, CONTINUED

NAME: Lieutenant Jackson
TITLE: Correctional Lieutenant
ADDRESS: Pendleton Correctional Facility, 4490 West Reformatory Road, Pendleton, Indiana 46064

NAME: Officer Bishop
TITLE: Correctional Officer
ADDRESS: Pendleton Correctional Facility, 4490 West Reformatory Road, Pendleton, Indiana 46064

NAME: Unknown
TITLE: Correctional Officer
ADDRESS: Pendleton Correctional Facility, 4490 West Reformatory Road, Pendleton, Indiana 46064

NAME: Unknown / Known as "Precious"
TITLE: Correctional Nurse
ADDRESS: Pendleton Correctional Facility, 4490 West Reformatory Road, Pendleton, Indiana 46064

## JURISDICTION

1. Jurisdiction is envoked pursuant to 28 U.S.C. 1331, as these are violations of federal law and arise in the United States.

2. Jurisdiction is also envoked pursuant to 28 U.S.C. 1343 for the violations of negligence and battery state tort violations.

(3)

# Statement of Claims

Defendants, B. Hurt, Sgt. Blanton, and Casework Manager Bookout, are sued in their individual capacities, for Cruel and Unusual Punishment/"Failure to Protect", an Eighth (8th) Amendment violation of the United States Constitution, and State tort Negligence, for the defendants failure to protect and/or punish the plaintiff, after the plaintiff notified the defendants of threats to him by multiple offenders, to stab him, rape him and throw hot stuff in the cell on him and had a contract or paid other offenders to stab plaintiff, denied plaintiff "Request For Protection," forcing plaintiff to commit class A conduct violations to be moved for his own personal safety.

Defendants, Officer Sirguy, Officer Turner, and the unknown Correctional Officer are sued in their individual capacities for Cruel and Unusual Punishment for informing offenders trying to get in the plaintiff's cell, that he had "Check in," so they could not open his cell, and when plaintiff's "Request For Protection" had been rejected, informed those same offenders that he was not going anywhere, and informed plaintiff that he could "not just put Mike P. in cell..." in front of other offenders, referring to plaintiffs' "Request For Protection," all of which put plaintiffs' life in further peril, in violation of plaintiffs' Eighth (8th) Amendment Rights to the United States Constitution.

Defendants, Officer Gray and Lieutenant Morados, are sued in their individual capacities for Excessive Force, an Eighth Amendment (8th) violation to the United States Constitution, and State tort violation of Battery, when the Defendants, in a rude and angry manner, had plaintiff put his arms out of his cuffport as far as they would go, put handcuffs on the plaintiff as tight as they would go, and began to pull on them causing pain and suffering, while doing the same on the way to medical, which caused cuts and bruises to plaintiffs' wrists, re-injury to the

(4.)

## Statement of Claims, continued.

plaintiffs' right forearm, with numbness and tingling to plaintiff left hand and wrist, and right wrist, after plaintiff, out of desperation and fear for his life, threw four (4) ounces of cold water on a female officer.

Unknown Defendant, Nurse known as "Precious", is sued in his individual capacity, for denying plaintiff medical attention when he was taken to Medical for Seg. review, after throwing water on staff, despite plaintiff crying and in obvious pain and requesting that his hands be looked at because he was in pain and could not feel his hands, in violation of plaintiffs' Eighth (8th) Amendment rights to the United States Constitution, and State tort negligence, due to defendant willfully denying care to the plaintiff, owed to the plaintiff, as a obligation of his employment with I.D.O.C.

Defendant, Lieutenant Jackson, is sued in his individual capacity for Cruel and unusual punishment, an Eighth (8th) Amendment violation to the United States Constitution and State tort negligence, when plaintiff was denied access to soap to wash his hands for thirteen (13) days while on strip cell, denied toothbrush and toothpaste for thirteen (13) days to brush his teeth while on strip cell, after sending multiple requests to defendant request them, and notifying defendant daily that that I had been on strip cell longer than the seven (7) days per plaintiffs' single staff assault, was forced to stay on strip cell six (6) days longer than required, and forced to stay in a cell without drinking water for eight (8) days after defendant, Lieutenant Jackson had been notified, while being responsible for the care and overall needs of the G-cell house offender population and ensuring that offenders cells or in working order, willfully neglected the care and needs owed plaintiff, causing plaintiff to suffer unnecessary and burdensome hardships, without penological justification.

(5.)

## Statement of Claims, Continued.

Defendant, Officer Bishop is sued in his individual capacity for the deliberate denial and/or withholding of plaintiff's legal material, writing material, religious material, and other allowable property. Denying plaintiff access to the court to respond to court order, access to the U.S. Mail to contact his attorney to send requested documents in plaintiff's personal property, and practice his religious freedoms from his reading his religious material, in violation of plaintiff's First (1st) and Fourteenth (14th) Amendment rights to the United States Constitution, without penalogical justification, when plaintiff came off strip cell and sent multiple request asking for his property.

## Statement of Facts

1.) On 1-22-2023, while housed in H-cell house ("HCH" hereafter), 18-4B, the plaintiff was threatened by an offender on 2B Range, for talking to one of his fellow disciples about spiritual principles because he himself did not believe in God. The 2B offender began to get other "folks" together saying that I had disrespected him. 2.) After shift had changed at 6pm, the 2B offender began to offer people money to burn me up or throw something hot in the cell on me, including the detail worker on 4B whom the plaintiff had been talking to about spiritual principles, (Mike P.), in cell 20-4B. While the detail worker was on the range and trying to find a way to throw something in my cell, offenders from 2B Range kept trying to find other things that could be heated up to throw in in the cell but couldn't. 3.) On 1-23-2023, at approx. 6:10 A.M., detail on 2B and other workers had began to be let out of their cells. Apparently, some offenders had asked Sgt. Williams to get in my cell and was denied, because the detail worker on 2B (Gerald) said, "they wouldn't do it, but I think he has a pass this morning. Let me go check and make sure!" Referring to the plaintiff

(6)

# Statement of Facts, continued.

4) At 9am, plaintiff's cell was opened for his sick call pass. As plaintiff began walking down the range, the utility worker came on the range with the ice bucket, while the detail worker pulled a bag of trash down the middle of the range to trap the plaintiff from getting passed, while two (2) other offenders ran on the range past the plaintiff to the plaintiff's cell because they did not know who plaintiff was, but his cell location. 5) Plaintiff went to his sick call pass, but before entering the Infirmary saw the two (2) offenders walking with the two (2) offenders who ran to plaintiff's cell. Upon entering the Infirmary, the four (4) offenders placed themselves around plaintiff in the holding cage. When chow was called, Officer asked if anyone wanted to go back they could, that they would be rescheduled, plaintiff went to ask when his name would be called and two (2) of the four (4) "folks" thought I was leaving and when I stopped to ask when I would be called, they stopped as well and left when they saw I wasn't leaving.

6) Plaintiff, one (1) of the two (2) offenders who ran to my cell and the offender who began the threats from 2B Range were left and after I questioned the two (2) about what their beef was with me, the one (1) who ran to my cell laughed and left and the other said he did not believe in God and did not want to hear about it. 7) After plaintiff left sick call he went to the D.O. Building and requested to be moved because offenders had threatened to stab, rape, and throw hot stuff in the cell on him. Plaintiff informed defendant, B. Hurt that he did not want to sign P.C. papers, that he worked in the kitchen, was in the "IN 2 WORK" time cut program and went to church every week. Plaintiff informed defendant, B. Hurt that he "just didn't want to be walking around with this!" and pulled out a padlock with a cable tied to it, which plaintiff began to untie. As defendant, got closer to see what it was, he told plaintiff, "Now I have to write you up!" Plaintiff told B. Hurt that he didn't have to write him up, he was taking the cable off of it, and that he had done it because offenders had threatened to stab him and rape him, and he did not know how many of them there were,

## Statement of Facts, continued.

but he didn't want to get stabbed before he could get moved. 8.) Plaintiff was written up on a "Weapon" Conduct Report, found guilty, and had six (6) months taken and three (3) months segregation. On or around 4-19-2023, plaintiff filled out a "Request for Protection," which was given to Defendant, Sgt. Blanton. The officer brought me a request slip from Defendant, Sgt. Blanton, which stated that she could not do anything with it without more information. I informed the officer that that was all I knew and offered my Conduct Report which provides that I asked to be moved because of threats, the grievances I wrote, and the request slip I wrote to I.A. to save the video as evidence, which shows that it was done. The officer said he would let Defendant, Blanton know and when she came on the range she informed plaintiff that she would take care of it and she would have to send it out when she left in the morning. Nothing was done and on 4-24-2023, plaintiff was sent back to HCH. 9.) Before plaintiff got to his cell, offenders were hollering that the plaintiff was back, and his new whites were stolen. Plaintiff was sent to cell 23-6B, and noticed that he had been moved to a range with one of the offenders who ran to his cell on 1-23-2023, and wrote a grievance concerning this fact on or around 4-24-2023, and to date have not recieved a response or reciept of grievance. While plaintiff was in segregation, he grew short braids and goatee, which he braided, and while out of his cell the plaintiff rarely wore his glasses to prevent being noticed. 10.) However, on 5-5-2023, at around 1:30am, I heard offenders on 4B talking about plaintiff was a rat and that they should have never sent him, (plaintiff) back over there, (referring to HCH). Mike P. asked who he was referring to and 4-9, (cell 23-4B) stated, "That fat ass nigga Mike upstairs!" He began telling Mike P. that it was cool until he seen that paperwork or appeal and that plaintiff didn't think he saw him, but that he saw plaintiff hurry up and get off the range when bro and em come on the range that day, (referring to 1-23-2023). 4-9 then said, "I'll pay a motherfucker to fuck his fat ass up!" At least three offenders responded and come out of their cells with 3:30am Diabetic line, though they weren't Diabetics. 11.) Plaintiff set in front of the c/o's office on a table beside another offender while one (1) of the non-diabetics who come out held an orange tray rack, which he could not swing at plaintiff due to plaintiff being between the offender beside him and the stairs on the other side, while the offenders behind plaintiff continued to plot on plaintiff. 12.) At approx.

## STATEMENT OF FACTS, CONTINUED.

7am., plaintiff's cell was opened to pick up legal mail downstairs. While going downstairs to get legal mail, on the upper landing, up under the camera were two (2) of the offenders who came out for 3:30am diabetic line, who weren't diabetic, but responded to being paid to "fuck" plaintiff up, and pointing to me, indicating that I was the one. 13.) When the plaintiff came back to 6B Range, the plaintiff had the Casework Manager put a thing on his cell to indicate that he did not want recreation to keep his cell from being opened. After rec, the plaintiff hears more conversation about stabbing plaintiff with 4-9 saying, "I ain't saying you gotta kill the nigga!" and another offender saying, "If I go up there im trying to kill em!" The offenders were saying that the plaintiff wouldn't come out and that they wanted "to get him out here!" After hearing this the plaintiff called home and told his brother and told him to call the facility and let them know that people were paying other offenders to stab plaintiff and he needed to be moved. 14.) Approx. 10 minutes later, plaintiff was brought a "Request For Protection" form by defendant, Officer Sirguy, who then turned and left. During or after lunch, defendant, Officer Turner, rather than bringing the plaintiff a lunch tray and supper sack, put it in cell 22-6B, who was at work in the kitchen. 15.) After 11:30am. count cleared, offenders kept having defendant, Officer Turner roll plaintiff's cell door open. Plaintiff kept stepping out the cell, to make sure noone ran into the cell on him and have defendant, Turner to close his cell door over and over. After defendant, Turner came to plaintiff's cell to ask if he was going to diabetic line and refused, the plaintiff, feeling as if defendant, Sirguy had no intention of returning for the "Request For Protection" form, gave it to defendant, Turner, who turned it in. 16.) As more offenders went to 4B to except money (drugs) to stab plaintiff had called home again, fearing that one of the officers, who might not know, would eventually open plaintiff's door for one of the offenders as they went from defendant, Turner to defendant, Sirguy, trying to get in plaintiff's cell. According to offender Gerald (2B Detail Worker), both defendants, Turner and Sirguy, they both informed him that they could not open plaintiff's cell because "he had checked in." Later, defendant, Turner came to get plaintiff, and escorted him to defendant, Casework Manager, Bookout's

(9.)

## Statement of Facts. Continued.

office. 17.) Once plaintiff was in defendant, Bookout's office, defendant, Bookout kept telling plaintiff that he did not understand why the offenders wanted to "Kill" him. Plaintiff kept telling the defendant of his previous 1-22-2023 and 1-23-2023 incident and all of the information he heard over the range, but other than that and what was written in the "Request For Protection" he did not know. 18.) Defendant, Singary came in defendant, Bookout's office and both defendant's kept asking, "Why are these people trying to kill you?" and the plaintiff kept telling them he did not know. Since the defendant kept seeming to imply that it was the result of something he had done, plaintiff asked them, "What, Do you want me to say I did something? I owe money!" The defendants stated, "No, I don't believe you! Your not going anywhere!" Plaintiff then stated, "Well, I'm going to threaten one of y'all because I'm not staying in here like that!" and threatened "to fuck one of y'all up!" Both defendants jumped up and told plaintiff to turn around, saying he was going right back up to his cell, cuffed the plaintiff and took him back to his cell.

19.) About 5 minutes later Gerald and other offenders began saying, "They said he ain't going nowhere!" And, again offender were putting and trying to get the next shift officer to open plaintiff's cell. 20.) At approx. 6:15pm., the plaintiff called home again for the 4th time to see if the new shift would move plaintiff so he could sleep and not worry his door being opened why he was sleep. Plaintiff kicked his cell door amist threats, and when the unknown defendant, officer came to plaintiff's cell, he informed the defendant that he needed to be moved. The defendant stated that plaintiff would not be moved. Out of desperation, the plaintiff hit the unknown defendant with a roll of toilet paper and bar of soap in order to go to segregation to get out of HCH.

21.) However, the defendant began to laugh as an offender physically began to pull him away from plaintiff, telling the unknown defendant not to write the plaintiff up or move him, along with cell 22-6B. The unknown defendant, officer pulled away from the offender and stated to plaintiff, "You can't just write mike?, and write a cell..." before plaintiff broke into what he was saying concerning plaintiff's "Request for Protection" further putting plaintiff's life at risk. Plaintiff asked the unknown defendant to come closer to his cell promising not to throw anything. When the unknown defendant got closer, the plaintiff asked him, "Have any offenders been trying to get my cell door opened?" and the defendant nodded his head in the affirmative. Plaintiff then asked, "Now, why would they be trying to do that for?" and the defendant stated, "I don't know!" and left.

## Statement of Facts, continued.

22) A little later, the unknown defendant returned to plaintiff cell with officer Wade, and asked, "So, you just need to be moved, correct?" and plaintiff stated, "Yes!" knowing the unknown defendant had seen plaintiff's "Request for Protection," and talked to the defendants from the previous shift because of his awareness of plaintiff situation. The unknown defendant then informed officer Wade that she could just go on back to what she was doing and not worry about the situation.

23) On 5-10-23, After offenders came back from breakfast, plaintiff saw a lot of offenders at the control panel trying to get officer Wade to open plaintiff's cell, so out of desperation, plaintiff threw cold water on officer Wade in order to get moved. 24) In response to the signal, defendant, Lt. Morados and defendant, officer Gray came to plaintiff's cell and ordered the plaintiff to stick his "arms" all the way out of the cuffport, as far as they would go, in which plaintiff immediately complied. Defendant, officer Gray then put the handcuffs on the plaintiff as tight as they would go, and defendant, Morados began pulling on the handcuffs while plaintiff's arms were already behind his back, outside his cuffport as far as they would go, causing plaintiff to holler out in pain. On the way down the stairs and while on the way to medical, defendant, officer Gray had been twisting the handcuffs different ways to cause plaintiff even more pain and while on the way to medical, defendant, Morados stated, "Here, let me make sure those are tight enough." and began squeezing the handcuffs causing plaintiff to holler out in pain because the handcuffs were already too tight to lock any more. 25) While at medical for seg. review, in pain, overwhelmed and exhausted, the plaintiff, begging and crying asked the

D-6 (revised 4/20/2022)         Complaint - (11.)

DEFENDANT, UNKNOWN NURSE, KNOWN AS "PRECIOUS", to check his hands because the cuffs were too tight, plaintiff could not feel his hands, and DEFENDANT, UNKNOWN NURSE, KNOWN AS "PRECIOUS" REFUSED to provide any care to the plaintiff, even after DEFENDANT, Gray asked "Not even his vitals?"

26.) After the UNKNOWN NURSE, KNOWN AS "PRECIOUS" had completed plaintiff's SEG. REVIEW forms he was taken to G-Cell house and put on strip cell in cell 6-2D. While strip cell is a MANDATORY (7) days for each assault on staff, plaintiff was forced to stay on strip cell for (13) days for his single assault on staff, eating finger food, with no soap to wash his hands after he used the restroom or before he ate, nor was he allowed a toothbrush or toothpaste to brush his teeth, though he wrote DEFENDANT, Lt. JACKSON about these issues on 3 or more occasions, since DEFENDANT, JACKSON has the overall responsibility for these issues. DEFENDANT, JACKSON neither responded to plaintiff's requests, provided any of the items requested, nor let plaintiff off strip cell.

27.) On 5-18-2023, the plaintiff was taking out of strip cell and moved to cell 16-1C, which did not have drinking water. DEFENDANT, JACKSON was informed and responded that there was a work order in on it, but allowed plaintiff to stay in that cell without drinking water until it was fixed on or about 5-26-2023. DEFENDANT, JACKSON is responsible for ensuring that all cells are in working condition and putting in work orders, and was aware that there was no drinking water in the cell before plaintiff was put in that cell.

28.) Though plaintiff was forced to stay on strip cell (6) days over what he was required to, upon being let off strip cell plaintiff was entitled to have his legal work, writing material, religious material, among other things. However, since plaintiff was let off strip cell he has been denied all of his allowable property, except a pair of shoes for rec, some hygiene, and his tablet, though the people

(12)

## Statement of Facts, Continued.

who got off strip cell before plaintiff, recieved all or most of their allowable property before they left strip cell. Plaintiff, has wrote Defendant, Officer Bishop (4) Request Slips since being off strip cell, requesting all of my allowable property and reminding him that I have been off strip cell since 5-18-2023. There is no penalogical justification for Defendant, Bishop to continue withholding and denying plaintiff his allowable property to write his attorney, do his legal work, or practice his religious studies.

## Relief Requested

1. Plaintiff is Requesting $200,000 Punitive Damages;
2. Plaintiff is Requesting $50,000 Compensatory and Declaratory Relief;
3. Plaintiff is Requesting $50,000 for injuries and Emotional Distress for Excessive Force and State Tort Battery.
4. Plaintiff is Requesting Injunctive Relief against Defendants from comitting further acts prescribed herein.

Date: 5-30-2023      x Michael Woods #911570
                        (Plaintiff - Pro-Se)

## Affirmation

Undersigned plaintiff, hereby affirms that the foregoing are true and correct to the best of his knowledge.

x Michael Woods #911570

(13)